[No. A040682. First Dist., Div. Four. Oct. 17, 1988.]

SECURITY PACIFIC NATIONAL BANK, Plaintiff and Respondent,
v.
CONRAD H. CASAVANT, Defendant and Appellant.

**COUNSEL**

Michael E. Brinkman for Defendant and Appellant.

Steven Alan Beilock and Broad, Schulz, Larson & Wineberg for Plaintiff and Respondent.

**OPINION**

**PERLEY, J.**—Conrad H. Casavant (appellant) appeals from a deficiency judgment in favor of Security Pacific National Bank (the bank) on a floating home purchase money loan. Citing Code of Civil Procedure section 580b (hereinafter section 580b) and Health and Safety Code section 18038.7 (hereinafter section 18038.7), appellant argues that the bank's sole recourse is against its collateral. We hold that a lender who makes a purchase money loan to the buyer of a floating home may obtain a deficiency judgment under section 18038.7 and therefore affirm.

Appellant obtained a $65,000 loan from the bank to finance his purchase of a floating home. The loan was secured by the floating home and an assignment of appellant's rights as lessee of the berth where it was moored. After appellant defaulted on the loan, the bank repossessed and sold the floating home for $24,000. Judgment was entered herein for the unpaid balance of the loan.

Section 18038.7 provides that, "No deficiency judgment shall lie in any event, after the sale of any manufactured home, mobilehome, commercial coach, truck camper, or floating home subject to registration pursuant to this part, *for failure of the purchaser to complete his or her sale contract given to the seller to secure payment of the balance of the purchase price* of the manufactured home, mobilehome, commercial coach, truck camper, or floating home. This section shall not apply in the event there is substantial damage to the manufactured home, mobilehome, commercial coach, truck camper, or floating home other than wear and tear from normal usage." (Italics added.) Appellant contends that the first sentence of this statute

should be interpreted to preclude the bank from obtaining a deficiency judgment.[1] It appears that section 18038.7 has yet to be judicially construed.

Section 18038.7 evolved out of Civil Code section 2983.8 (hereinafter section 2983.8). Section 2983.8, which was added to the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.) in 1972 (Stats. 1972, ch. 1001, § 3, p. 1829) and applies only to contracts entered into on or after March 7, 1973, and before July 1, 1981, prevents recovery of a deficiency judgment after the sale of a mobilehome "for failure of the purchaser to complete his conditional sale contract given to the seller to secure payment of the balance of the purchase price of such mobilehome." Mobilehomes were not the subject of antideficiency legislation prior to the enactment of section 2983.8. (See Comment (1973) 4 Pacific L.J. 598.) The antideficiency protection applicable to mobilehomes was eventually carried forward into the Health and Safety Code, and was extended to cover floating homes in 1985. (Stats. 1980, ch. 1149, § 10, p. 3738; § 31.5, p. 3751; Stats. 1981, ch. 975, § 3, p. 3740; Stats. 1985, ch. 1467, § 2, p. 5368.)

Section 2983.8 was construed in *Bank of Sonoma County* v. *Dorries* (1986) 185 Cal.App.3d 1291 [230 Cal.Rptr. 459]. The bank in that case sought to recover a money judgment on a mobilehome purchase money obligation. The court found the wording of section 2983.8 to be "virtually identical" to that of section 580b,[2] placed the secured party in the same position as a purchase money lender for residential real property, and held that its sole recourse was repossession of the mobilehome. (*Id.,* at pp. 1293-1294.) Appellant seeks the same interpretation of section 18038.7.

■ Since "statutes *in pari materia*—statutes dealing with the same subject as the one being construed—are a relevant source of aid in construing the statute in question" (*People* v. *Chevron Chemical Co.* (1983) 143 Cal.App.3d 50, 54 [191 Cal.Rptr. 537]), it is appropriate to construe section 18038.7 with reference to section 580b. Section 580b was last amended in 1963. As indicated in footnote 2, *ante,* the 1963 amendments distinguished between obligations owed to a "vendor" on the one hand and a "lender" on

---

[1] In view of our disposition of this argument, we need not reach appellant's further contention that "substantial damage" to the floating home was not shown for purposes of the second sentence of section 18038.7.

[2] Section 580b reads in pertinent part as follows: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given *to the vendor* to secure payment of the balance of the purchase price of real property, *or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.*" The highlighted language was added in 1963. (Stats. 1963, ch. 2158, § 1, p. 4500.)

the other. ▮ "The Legislature is presumed to know the existing law and have in mind its previous enactments when legislating on a particular subject." (*Rosenthal* v. *Cory* (1977) 69 Cal.App.3d 950, 953 [138 Cal.Rptr. 442].) ▮ Assuming, then, that it had section 580b in mind when it later extended antideficiency protection to certain mobilehome and floating home secured obligations, it is significant that, in framing such protection, the Legislature incorporated nearly verbatim the 580b language applicable to vendors (omitting only section 580b's reference to real property security instruments) and failed to mention lenders. ▮ " ' " 'Where a statute, with reference to one subject contains a given provision, the omission of such a provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.' " (Citations)' " (*Bunner* v. *Imperial Ins. Co.* (1986) 181 Cal.App.3d 14, 22 [225 Cal.Rptr. 912].) ▮ Section 18038.7 by its terms applies only to sellers. It does not refer to lenders and we cannot presume, in light of section 580b, that the omission was unintentional.

Our comparison of sections 580b and 18038.7 thus leads us to a different conclusion than the one drawn with respect to section 2983.8 in *Bank of Sonoma County* v. *Dorries, supra,* 185 Cal.App.3d 1291.[3] If a lender is not a "vendor" for purposes of section 580b, then it would not appear to be a "seller" within the meaning of section 18038.7. It is also significant in this regard that section 18038.7 is phrased in terms of "sales contracts" rather than "loans." A conditional sale contract might be viewed as the functional equivalent of a loan, but that does not mean a loan is necessarily synonymous with a sale contract for purposes of section 18038.7. To the contrary, the fact that a closely-related statute outlining the procedure for foreclosure on floating homes speaks in terms of loans *or* sale contracts suggests that the words mean something different in the context of section 18038.7. (See Health & Saf. Code, § 18037.5, subd. (a).) Therefore, the bank is not subject to the first sentence of section 18038.7 and that portion of section 18038.7 does not preclude a deficiency judgment in this case.

We agree with appellant that the real property antideficiency statutes have been accorded a "broad and liberal" construction (see, e.g., *Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370]). We acknowledge that the propriety of limiting the antideficiency protection afforded to the class of home buyers covered by section 18038.7, just because they happen to live in a species of personal property, is at least

---

[3] The situation in our case, however, may be distinguishable. It appears that the bank in *Dorries* may have been the assignee of a conditional seller. In that event, it would have stood in the shoes of a "seller" and been subject to the same antideficiency limitation. (See Civ. Code, § 2983.5. And cf. *Kistler* v. *Vasi* (1969) 71 Cal.2d 261, 263-264 [78 Cal.Rptr. 170, 455 P.2d 106].) There was no such assignment herein.

debatable. Section 18038.7's unequal treatment of floating home lenders and conditional sellers could also be questioned. The distinction may be traceable to the automobile finance law where the mobilehome antideficiency provision originally appeared. (See *Hernandez* v. *Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 75 [164 Cal.Rptr. 279], indicating that the Rees-Levering Act "was not designed to protect the sophisticated buyer, capable of arranging his own financing . . . .")[4]

Nevertheless, the rules governing personal property security interests differ in many respects from those applied to liens on real property, and one such difference appears in the language of the antideficiency statutes considered in this case. If the Legislature had intended to treat floating homes the same as real property, then it would not have allowed a deficiency judgment where the floating home is "substantially damaged" because no such allowance is made in section 580b. If it had intended to bar floating home purchase money lenders from obtaining deficiency judgments, then presumably it would have said so.

■ Appellant also suggests that section 580b is applicable directly, and not merely by analogy, because the bank's security included an assignment of his rights in a berth lease. A tenant's leasehold interest does not ordinarily constitute real property for purposes of the "one form of action" rule of Code of Civil Procedure section 726. (*Taylor* v. *Bouissiere* (1987) 195 Cal.App.3d 1197, 1200 [241 Cal.Rptr. 253].) Section 726 is also part of the " 'statutory system' curbing deficiency judgments in cases involving land-secured obligations" (*Prunty* v. *Bank of America, supra,* 37 Cal.App.3d at p. 436, fn. 7), and there is no reason to treat a leasehold interest any differently for purposes of section 580b. Accordingly, the assignment of appellant's berth lease does not bring his obligation within the purview of section 580b.

The bank as the prevailing party is entitled to its costs on appeal. (Cal. Rules of Court, rule 26(a).) According to the bank's brief, the parties' loan contract was admitted into evidence at trial and it includes appellant's agreement to pay all collection costs and legal expenses, including attorneys' fees incurred by the bank in exercising its rights and remedies under the contract. Such a provision would also entitle the bank to an award of reasonable attorneys' fees in connection with the appeal. (Civ. Code, § 1717, subd. (a); see *Beverly Hills Nat. Bank* v. *Glynn* (1971) 16 Cal.App.3d 274,

---

[4]*Hernandez* v. *Atlantic Finance Co.* holds that a lender may be treated as a seller for purposes of remedies under the automobile finance law if it makes "seller-assisted" loans, and this principle was applied to a motor home lender in *Eldorado Bank* v. *Lytle* (1983) 147 Cal.App.3d.Supp. 17 [195 Cal.Rptr. 499]. There is no evidence of seller assistance in connection with appellant's loan in this case.

289 [93 Cal.Rptr. 907].) Given the very limited record presented herein, determination of the bank's entitlement to attorneys' fees is left to the trial court. (Cf. *Security Pacific National Bank* v. *Adamo* (1983) 142 Cal.App.3d 492, 498 [191 Cal.Rptr. 134].)

The judgment is affirmed with directions to the trial court to determine the amount of attorneys' fees to be awarded to the bank for legal services rendered on this appeal.

Anderson, P. J., and Poché, J., concurred.