[No. A056762. First Dist., Div. Four. Apr. 22, 1993.]

DONALD E. FARRAR et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

**COUNSEL**

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Elizabeth S. Salveson and John E. Eichhorst for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Richard Finn and Joyce E. Hee, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**PERLEY, J.**—Revenue and Taxation Code[1] section 19055 provides that an administrative claim for refund of income taxes when "filed for or on behalf of a class of taxpayers shall do all of the following: [¶] (a) Be accompanied by written authorization from each taxpayer sought to be included in the class. [¶] (b) Be signed by each taxpayer or taxpayer's authorized representative. [¶] (c) State the specific grounds on which the claim is founded."

This appeal from an order refusing to certify a class action seeking a judicial refund of taxes collected by the Franchise Tax Board (Board) presents the issue of whether section 19055 means what it says. We hold that it does and that it is to be enforced on that basis. We further hold that would-be representatives who fail to take section 19055 at face value cannot invoke the doctrine of substantial compliance otherwise applicable to class actions.

### BACKGROUND

In a very real sense, it all began with Sandra Brown. It was she who in the early 1980's instituted a class action for refund of income taxes the Board had assessed and collected on dividends paid to class members by a trio of mutual funds for the tax years 1978, 1979, 1980, and 1981. She claimed that the Board had no power to tax the dividends because they derived from— and thus in legal effect were—nontaxable obligations of the federal government. The trial court sustained this claim, certified the class, and ordered the Board to provide notice to the members of the class identified from the funds' records.

Approximately 40,000 claims were received and allowed by the Board. The ensuing judgment ordering refunds of almost $6 million plus substantial interest was affirmed by this court in December of 1987. (*Brown* v. *Franchise Tax Bd.* (1987) 197 Cal.App.3d 300 [242 Cal.Rptr. 810].)[2]

Several very relevant events occurred during the pendency of the *Brown* litigation. First, having incurred extraordinary and unanticipated expenses of more than $1 million, the Board drafted amendments to section 19055 which

---

[1]Subsequent statutory references are to this code unless otherwise indicated.

[2]Our affirmance also reached the procedure established by the trial court to deal with the 3,000 or so disputed claims disallowed by the Board.

the Legislature enacted and which became effective in September of 1986.[3] (See fn. 8, *post.*) Second, in April of the following year, the administrative preliminaries to this case commenced when plaintiffs Donald and Joan Farrar filed a joint claim for refund of taxes they paid on dividends from the same three funds involved in *Brown*; plaintiffs' claim picked up where Sandra Brown's claim ended—with the tax year 1982—and extended through the three succeeding years. Mr. Farrar purported to make the claim as a class representative for all persons who paid California income tax on the dividends from the funds.

Hearing nothing from the Board, plaintiffs deemed their claim disallowed (see § 19085) and commenced this action in April of 1988. Plaintiff Donald Farrar identified himself in the complaint as suing "individually and on behalf of all others similarly situated." Plaintiffs alleged that the Board's continued collection of tax on dividends from federal government obligations violated a host of state and federal constitutional and statutory provisions. The Board's silence ended in late June of 1988—about the time our decision in *Brown* became final—when it answered plaintiffs' complaint and asserted for the first time that plaintiffs' administrative claim did not comply with section 19055.

Plaintiffs thereafter submitted five "supplements" to their administrative claim with more than 600 written authorizations from other taxpayers purporting to designate plaintiffs to prosecute the action on their behalf. The Board responded by informing plaintiffs in effect that (1) exclusive jurisdiction over plaintiffs' claim was now with the court,[4] (2) the authorizations were invalid because they had not been filed with, and "cannot retroactively cure the defects" in plaintiffs' administrative claim, and (3) each of the authorizations was "considered to be a new claim" that was untimely because "[t]he limitations period for filing such claims, prescribed by . . . Section 19053, has expired."

Plaintiffs then moved for certification of a class and two subclasses defined so as to "include all [individual and corporate] investors who paid

---

[3]Prior to the amendment section 19055 provided: "Every claim for refund shall be in writing and shall state the specific grounds upon which it is founded." (See Stats. 1945, ch. 645, § 110, p. 1289.)

After amendment section 19055 now provides: "Every claim for refund shall be in writing, shall be signed by the taxpayer or the taxpayer's authorized representative, and shall state the specific grounds upon which it is founded. A claim filed for or on behalf of a class of taxpayers shall do all of the following: [¶] (a) Be accompanied by written authorization from each taxpayer sought to be included in the class. [¶] (b) Be signed by each taxpayer or taxpayer's authorized representative. [¶] (c) State the specific grounds on which the claim is founded." (Stats. 1986, ch. 931, § 4, p. 3225.)

[4]The Board stated that it was nevertheless "subject to the court's approval, . . . willing to grant the claims of Donald E. and Joan F. Farrar, *as individuals*, but not as representatives of any class, for refund of tax paid on distributions" from two of the funds. (Original italics.)

California tax on distributions from the Funds in the relevant years irrespective of whether the investors brought individual claims for refunds."[5] The trial court denied the motion, concluding that "plaintiffs have failed to meet the class claim filing requirements of . . . Section 19055" and "in view of that statute, and how specific it is, there was not substantial compliance."

Plaintiffs perfected a valid appeal from the formal order denying their motion.[6]

## REVIEW

Both sides have throughout this litigation received exceptionally competent representation. Fresh from her triumph in *Brown*, plaintiff's counsel is understandably anxious to achieve a similar victory by establishing that the investment dividends of her actual and putative clients are beyond the Board's taxable domain. That far we need not go, for the dispositive issues on this appeal are purely procedural.

The progression of plaintiffs' arguments runs as follows: First, relying on the proposition stated by our Supreme Court that administrative claims statutes were not intended to "thwart class relief" (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 457 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]), plaintiffs urge that section 19055 be given a construction that will avert such a result. Second, they submit that section 19055 and 19085 should not be read as permitting the Board to "sandbag" the unwary by waiting until the administrative process is concluded and judicial proceedings begun before raising a defect in the form of the administrative claim. Third, they contend that the class claim they filed with the Board should be treated as adequate for purposes of section 19055 by application of the doctrine of substantial compliance adopted in *City of San Jose* and subsequent decisions. Finally, plaintiffs urge that ratification of the construction given section 19055 by the Board and the trial court would allow a taxing practice prohibited by federal law (31 U.S.C. § 3124) and our *Brown* decision to go unchecked, thereby violating the supremacy clause of article VI of the United States Constitution.

The well-known advantages of the class action are convenience, efficiency, and completeness. (E.g., *Richmond* v. *Dart Industries, Inc., supra,*

---

[5]Plaintiffs advised the trial court that the anticipated size of the class could be as high as 90,000.

All of the taxpayers identified in the supplements to plaintiffs' refund claim before the Board were individuals.

[6]The order is appealable. (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

29 Cal.3d 462, at p. 469; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 807-808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Its general but limited codification in Code of Civil Procedure section 382[7] notwithstanding, the class action retains the essence of its origins as an invention of equity. (See *City of San Jose* v. *Superior Court, supra*, 12 Cal.3d 447 at pp. 458, 463; *Hansberry* v. *Lee* (1940) 311 U.S. 32, 41 [85 L.Ed. 22, 26-27, 61 S.Ct. 115, 132 A.L.R. 741]; *Supreme Tribe of Ben-Hur* v. *Cauble* (1921) 255 U.S. 356, 363, 366 [65 L.Ed. 673, 678, 679, 41 S.Ct. 338]; Note, *Class Actions and Interpleader: California Procedure and the Federal Rules* (1953) 6 Stan.L.Rev. 120, 121-123.) Our Supreme Court has reinforced this heritage by urging trial courts to adopt flexible and innovative procedures from common law sources and analogous statutes. (See *Richmond* v. *Dart Industries, Inc., supra*, at pp. 469-470, fn. 7; *Vasquez* v. *Superior Court, supra*, at pp. 820-821.)

In light of the fact that the class action remedy continues to be essentially equitable in nature, and given that equity will defer to statute, the common law features of class action administration are subject to legislative displacement. (See *City of South San Francisco* v. *Cypress Lawn Cemetery Assn.* (1992) 11 Cal.App.4th 916, 922-923 [14 Cal.Rptr.2d 323]; *Johnson* v. *Tago, Inc.* (1986) 188 Cal.App.3d 507, 518 [233 Cal.Rptr. 503].) ▮ Section 19055 is a statute that is recent in origin, unambiguous in phrasing, and specific in the scope of its application. It therefore is to be accepted as stating the governing rule of decision and to be applied according to its plain language. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

▮ That plain language does not evidence any legislative intent to thwart class relief for tax refunds. On the contrary, section 19055 reflects the Legislature's express sanction for class actions. All that section 19055 does is establish conditions to the availability of that remedy. With the exception of their supremacy clause argument, plaintiffs raise no challenge to the Legislature's power to impose such conditions.

Plaintiff's second point requires that section 19055 be considered in conjunction with section 19085, which provides in pertinent part: "If the . . . Board fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an

---

[7]Whose relevant language provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (See also Civ. Code, § 1781.)

action against the . . . Board on the grounds set forth in the claim for recovery of the whole or any part of the amount claimed . . . ."

■ Section 19085 is obviously designed to provide a measure of certainty and protection to both taxpayers and the Board. By requiring the taxpayer to state the grounds for a refund claim, section 19055 gives the Board notice of the claim and the underlying substantive reasons. If, for whatever reason, the Board takes no action on the claim, the Board knows what it will confront if the taxpayer initiates a judicial action for a refund. On the other hand, the taxpayer is given a clear timetable for commencing judicial action instead of endlessly wondering if an administrative refund claim has been lost down a bureaucratic rat hole. (Cf. *Shell Western E & P, Inc.* v. *County of Lake* (1990) 224 Cal.App.3d 974, 984-985 [274 Cal.Rptr. 313].)

■ Plaintiffs appear to believe that section 19085 somehow obliges the Board to notify a taxpayer of any defect in the form of an administrative claim in order to preserve the defect as an issue in subsequent court action. In other words, the Board is not required to respond to the substantive merits of the claim but, on penalty of forfeiting the issue, the Board is required to point out defects in the form of the claim. This conjures up the bewildering possibility of the Board telling a taxpayer "Your claim is not in the correct form, but don't assume that our telling you about this problem means we will make a decision on your claim if you correct the problem."

Any possible merit to plaintiffs' position is obliterated by the indisputable fact that plaintiffs made no real attempt to comply with section 19055 until after they commenced this action, which was 17 months after the amended version of that statute took effect. For 12 of those 17 months plaintiffs were represented by counsel who would have particular reason to know that section 19055 had been amended, because it was that counsel's success in the *Brown* litigation which was a proximate cause of the statute's revision. Actual as well as imputed or constructive knowledge is shown by plaintiffs' identifying their administrative claim as being on behalf of a class, a requirement of the amended section 19055 not present in its original form. (See fn. 3, *ante.*) But beyond this plaintiffs made not even a perfunctory effort to comply with the more detailed requirements specified by section 19055 for a class claim.

Plaintiffs' argument that something akin to a waiver or estoppel results from the Board not invoking section 19055 earlier is also defeated by constitutional considerations. ■ Article XIII, section 32 of the California Constitution specifies that "After payment of a tax claimed to be illegal,

an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." In light of our Supreme Court's acceptance that this provision "means what it says" (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 284 [165 Cal.Rptr. 122, 611 P.2d 463]), Courts of Appeal have held that they "are without authority to alter the statutory procedures for tax refunds enacted by the Legislature pursuant to the . . . command of article XIII, section 32." (*Shiseido Cosmetics (America) Ltd.* v. *Franchise State Bd.* (1991) 235 Cal.App.3d 478, 486-489 [286 Cal.Rptr. 690]; accord, *Masi* v. *Nagle* (1992) 5 Cal.App.4th 608, 611-612 [7 Cal.Rptr.2d 423]; *Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207, 1214 [214 Cal.Rptr. 9].)

The recent validation of this approach by our Supreme Court dooms plaintiffs' third argument—that their purported class action may go forward under the substantial compliance doctrine of *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447. There, the court held that to satisfy the administrative claim provision of the Government Torts Claims Act (Gov. Code, § 810 et seq., especially § 910) "the class claim must provide . . . specified information concerning the representative plaintiff and then sufficient information to identify and make ascertainable the class itself. . . . Beyond this, the sufficiency of the identifying information must be measured by the substantial compliance test." (*City of San Jose* v. *Superior Court, supra,* at p. 457, original italics omitted.) A number of Court of Appeal decisions extended this reasoning to class claims for tax refunds. (See e.g., *Schoderbek* v. *Carlson* (1980) 113 Cal.App.3d 1029 [170 Cal.Rptr. 400]; *Lattin* v. *Franchise Tax Board* (1977) 75 Cal.App.3d 377 [142 Cal.Rptr. 130]; *Santa Barbara Optical Co.* v. *State Bd. of Equalization* (1975) 47 Cal.App.3d 244 [120 Cal.Rptr. 609].) This trend was halted in *Woosley* v. *State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758].

*Woosley* involved a class action challenging the imposition of certain license fees and use taxes. Woosley filed an administrative refund claim on behalf of himself and all others similarly situated. The claim was denied, whereupon Woosley commenced a successful class action for refund. On its own initiative the Supreme Court raised and considered the issue of the adequacy of the class claim, concluding that the substantial compliance portion of *City of San Jose* "should not be extended to include claims for tax refunds." (*Woosley* v. *State of California, supra,* 3 Cal.4th 758 at pp. 788-789.)

With respect to the statute governing use tax refund claims, the court stated: "When Woosley filed his claim in 1977, section 6904 read: 'Every claim shall be in writing and shall state the specific grounds upon which the

claim is founded.' In 1987, approximately 10 years after Woosley filed his claim, the Legislature amended section 6904 to add the following language . . . : 'A claim filed for or on behalf of a class of taxpayers shall do all of the following: [¶] (1) Be accompanied by written authorization from each taxpayer sought to be included in the class. [¶] (2) Be signed by each taxpayer or taxpayer's authorized representative. [¶] (3) State the specific grounds on which the claim is founded.' (Stats. 1987, ch. 38, § 5, p. 101.) [¶] The statute as amended in 1987 expressly permits, for the first time, the filing of a class claim, but requires that each member of the class authorize his or her inclusion in the class and that each member of the class, or the class member's authorized representative, sign the claim. A class claim for refund of sales and use taxes may not be submitted, as it was in the present case, without the knowledge and express consent of each member of the class." (*Woosley* v. *State of California, supra,* 3 Cal.4th 758 at p. 791.) Noting that in 1986 "the Legislature had amended section 19055, governing claims for refunds of personal income taxes, and section 26074, governing claims for refunds of bank and corporate taxes, to add language nearly identical to that later added to section 6904," the court construed these amendments as evidencing the Legislature's aim "to allow a narrowly circumscribed form of class claims," specifically, "only those class claims where each member of the class expressly authorizes and signs the claim."[8] (*Id.* at pp. 791-792.) Disapproving the line of Court of Appeal decisions allowing class claims, the court concluded that "article XIII, section 32 of the California Constitution precludes this court from expanding the methods for seeking tax refunds expressly provided by the Legislature." (*Id.* at p. 792.)

Plaintiffs argue in a supplemental brief that *Woosley*—which was decided during the pendency of this appeal—is dicta on the issue of the construction of section 19055. Strictly speaking, plaintiffs may be correct. But as *Woosley* did construe a statute characterized as "nearly identical" to section 19055, the discussion of the in pari materia section 6904 is clearly germane for present purposes. (See *In re Phyle* (1947) 30 Cal.2d 838, 845 [186 P.2d 134]; *Security Pacific Nat. Bank* v. *Casavant* (1988) 205 Cal.App.3d 127, 130 [252 Cal.Rptr. 175].) If *Woosley* is dicta, it has an especially muscular nature and relevancy. ■ The lesson of *Woosley* we take to be that statutes governing administrative tax refund procedures, backed as they are by a plenary

---

[8]The court further noted that these amendments "were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action." (*Woosley* v. *State of California, supra,* 3 Cal.4th 758 at p. 791.)

constitutional authority, are to be strictly enforced.[9] (See also *Barclays Bank Internat. Ltd.* v. *Franchise Tax Bd.* (1992) 10 Cal.App.4th 1742, 1749 [14 Cal.Rptr.2d 537].)

 In any event, the court has held that the doctrine of substantial compliance kicks in only after the aspiring class representative plaintiff establishes "*some* compliance with *all* of the statutory requirements." (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at pp. 456-457, original italics.) By any stretch of the imagination, plaintiffs cannot demonstrate any pretense of timely compliance with the written authorizations requirement section 19055 demands of all members of a class refund claim. The inescapable consequence of plaintiffs' noncompliance is that their administrative claim was, and their refund action is, valid only as to them in their individual capacities. (See *Woosley* v. *State of California, supra,* 3 Cal.4th 758 at p. 788.)

 Plaintiff's final argument looks to avoid all of the foregoing by interposing the supremacy clause. Again, plaintiffs are looking ahead to the merits of their substantive attack on the tax. As we have just concluded, plaintiffs are properly in court and able to make that attack on their own behalf. But insofar as they are forced to go it alone, they are not aggrieved or hindered in that quest by the absence of a class behind them. (Cf. *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953].) Nothing in the supremacy clause requires them to be generals at the head of an army. Moreover, the United States Supreme Court has held that a state may, consistent with constitutional demands, ensure its "exceedingly strong interest in financial stability" by enacting a variety of procedural protections, among which are "timely notice of complaint" provisions and "relatively short statutes of limitations." (*McKesson Corp.* v. *Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 37, 45 [110 L.Ed.2d 17, 36, 41, 110 S.Ct. 2238].) This is the net effect of the provisions considered here; plaintiffs did not provide timely notice of a class claim in compliance with section 19055, and, when they took advantage of section 19085 to go into court, they deprived themselves of the ability to correct any defects in their administrative claim.

In sum, the trial court correctly recognized that plaintiffs had not complied with the plain language of section 19055, and that no federal constitutional

---

[9]As this court has particular reason to know, two months after *Woosley* the Supreme Court made it clear that it takes an equally dim view of attempts by the state to avoid strict compliance with the administrative machinery established by statute to consider refund claims. (See *Title Ins. Co.* v. *State Bd. of Equalization* (1992) 4 Cal.4th 715, 729-730 [14 Cal.Rptr.2d 822, 842 P.2d 121].)

consideration existed to enforcing compliance with that plain language. Denial of plaintiffs' certification motion was therefore not error.

The order is affirmed.

Anderson, P. J., and Reardon, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 15, 1993. Mosk, J., was of the opinion that the petition should be granted.