Filed 10/26/23  P. v. Garcia CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>DAVID GARCIA,<br><br>　　　Defendant and Appellant. | A166511<br><br>(Sonoma County Super. Ct.<br>No. SCR7537581) |

Defendant David Garcia appeals from his judgment of conviction for attempted robbery with a deadly and dangerous weapon stemming from his efforts to escape from a department store's loss prevention officer after Garcia took various items of merchandise from the store without paying for them. Garcia claims there was insufficient evidence to convict him of attempted robbery in the absence of evidence that the officer was frightened by Garcia's efforts; the trial court wrongly instructed the jury on attempted robbery in the absence of that evidence and thereby permitted the jury to convict him based on an improper legal theory; and there was insufficient evidence that he used a dangerous or deadly weapon in any attempted robbery.  We disagree with each claim and affirm.

# I. BACKGROUND

In July 2022, the Sonoma County District Attorney filed an information charging Garcia with one count of robbery of Steven Andrew Velasquez (Pen. Code, § 211[1]), a violent felony within the meaning of section 667.5, subdivision (c). The information alleged that Garcia personally used a deadly and dangerous weapon, a knife, during his attempted commission of the robbery (§ 12022, subd. (b)(1)), causing the crime to be a serious felony within the meaning of section 1192.7, subdivision (c).

At trial, Velasquez testified that on April 27, 2022, he was employed as a loss prevention officer (LPO) at Kohl's department store in Santa Rosa, California, charged with observing any potential theft and providing customer service. His responsibilities included operating a surveillance camera system from his office to observe customers in the store. On April 27, he saw via the camera system a man (who he later identified as Garcia) in the store wearing sunglasses and carrying a very large backpack. Velasquez, dressed in black clothes pursuant to the store's dress code and wearing a Kohl's lanyard visible around his neck, went to the man and "customer serviced" him, interacting with him for a minute or two. He then returned to his office and continued to watch the man, who took various items of merchandise and ran out of the store and into the parking lot without making any attempt to pay for them.

Velasquez chased after the man. He was within 10 to 12 feet of him when the man dropped a couple of items and Velasquez "yelled . . . something like . . . you know, you can't get away." The man "stopped . . . , turned around, and . . . pulled out a knife, and that's when I stopped pursuing." Specifically, as he turned around to face Velasquez, the man pulled a red

---

[1] Undesignated statutory references are to the Penal Code.

2

pocket knife out of his pocket with his right hand and whipped open its black blade while holding the merchandise in his left hand, and said something like, "[Y]ou can't outrun this." Velasquez immediately stopped, took a couple of steps back, and called the police. He continued to observe the man, keeping a distance away for his own safety, as the man, still holding the merchandise, was picked up by a driver of a car that then drove away.

Police came to the scene "a little bit later" that same day and interviewed Velasquez. The interview was recorded and played at trial. During it, Velasquez was asked if he had been scared during the incident and he said he had not been scared. He also testified that if the man had taken a couple of steps towards him with the knife, he "would have had some fear in me." He further testified that, having had some time to think about and process the incident, he thought he felt some fear when the man pulled out his knife. He also acknowledged that his memory of the incident was fresher at the time of the police interview.

Velasquez further testified that Kohl's was "a hands[-]off company;" that is, he was trained not to have any physical contact with suspected shoplifters. Further, he was trained to "[d]isengage immediately" if a suspected shoplifter displayed a weapon, which is what he did in this case.

California law provides that a shoplifter who uses force or fear against an LPO in the course of escaping capture may be convicted of robbery or attempted robbery of the LPO. (*People v. Estes* (1983) 147 Cal.App.3d 23, 25–29 [robbery] (*Estes*); *People v. Robins* (2020) 44 Cal.App.5th 413, 421 [attempted *Estes* robbery] (*Robins*).) Accordingly, the trial court instructed the jury on both second degree robbery and attempted second degree robbery. It instructed that second degree robbery included as an element that a defendant "used force or fear to take the property or to prevent the person

3

from resisting." It further instructed, "Fear . . . means fear of injury to the person himself or herself," requires that the person be "actually afraid," which "may be inferred from the circumstances," and which is "subjective in nature, requiring proof that the victim was in fact afraid, and that such fear allowed the crime to be accomplished."

The court also instructed that attempted second degree robbery was a lesser crime of second degree robbery. It further instructed, "To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant took a direct [but] ineffective step towards committing second degree robbery; and two, the defendant intend[ed] to commit second degree robbery."

In closing argument, the parties debated whether the evidence showed that Garcia's display of his pocket knife to Velasquez caused Velasquez to experience genuine fear, with each side citing parts of Velasquez's testimony or police interview that supported its position.

The jury acquitted Garcia of second degree robbery, but found him guilty of attempted second degree robbery. It found the allegation that Garcia used a deadly and dangerous weapon in committing this offense to be true.

The trial court sentenced Garcia to 24 months of formal probation. It ordered him to complete a residential drug treatment program and imposed various conditions, fines, fees, and assessments.

Garcia filed a timely notice of appeal.

## II. DISCUSSION

### A. *Law and Sufficient Evidence Support Garcia's Attempted Robbery Conviction and the Court's Related Jury Instructions*

Garcia first argues that we must reverse his attempted robbery conviction for lack of evidence that, in the course of his escaping with the

4

Kohl's merchandise, he used force or fear against LPO Velasquez. According to him, use of force or fear is an element of the offense of attempted *Estes* robbery. We disagree. The law governing attempted *Estes* robbery does not require proof that Garcia used force or fear against Velasquez as long as he took a direct, if ineffectual, step beyond preparation to commit robbery, and there is substantial evidence that he took such a step. Garcia also argues the trial court should not have instructed the jury on attempted robbery in light of the evidence that he did not frighten Velasquez, contending the court thereby permitted the jury to convict him based on an improper legal theory. This argument is incorrect for the same reasons.

### 1. Legal Standards

" 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.) It includes two phases: acquiring the property, and carrying it away . . . . [Citations.] What sets robbery apart from simple theft is the use of force or fear and taking from the victim's immediate presence. 'Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present.' [Citation.] In the prototypical case, a person commits robbery by assaulting a person and then stealing the person's property. The force or fear is used to acquire the property." (*Robins*, *supra*, 44 Cal.App.5th at pp. 418–419.)

" ' "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [her] property." ' [Citation.] 'The extent of the victim's fear "do[es] not need to be extreme . . . ." ' '[T]he fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' [Citation.] 'Actual fear may be inferred from

5

the circumstances, and need not be testified to explicitly by the victim.' " (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319.) "[T]he crime of robbery occurs when property is forcefully retained in the victim's presence, even when the victim was not present in its initial caption . . . ." (*People v. Gomez* (2008) 43 Cal.4th 249, 264.)

Garcia was convicted of attempted second degree robbery only. "An attempt to commit a crime is comprised of 'two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' (§ 21a; see § 664 [prescribing punishment].) Other than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." (*People v. Medina* (2007) 41 Cal.4th 685, 694.) Rather, "[a]n attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission. [Citations.] Under general attempt principles, commission of an element of the crime is not necessary." (*Ibid.*)

Further, Garcia was convicted of the attempted robbery of LPO Velasquez, even though Velasquez did not own, control, or possess the merchandise Garcia stole. That a shoplifter may commit a robbery of a store's LPO in the course of escaping capture was established in *Estes*, *supra*, 147 Cal.App.3d 23. There, the defendant, Estes, took various items of merchandise in a Sears store and left the store without paying for them. (*Id.* at p. 26.) A Sears security guard followed Estes into the parking lot and attempted to detain him. (*Ibid.*) Estes pulled out a knife, swung it at the guard, and threatened to kill him. (*Ibid.*) Eventually, defendant returned to the store with the guard and his manager; at trial he admitted to stealing the merchandise but denied using force of fear against anyone. (*Ibid.*) Convicted

6

of robbing the guard, he argued on appeal that this conviction was legally improper for multiple reasons. (*Id.* at pp. 26–28.)

The appellate court affirmed Estes's conviction. (*Estes, supra,* 147 Cal.App.3d at pp. 26–29.) It held that robbery, as an offense against a person in actual or constructive possession of the merchandise taken, may be committed against a store employee, including one charged with preventing thefts of merchandise, even if the employee does not own, is not in charge, and is not in immediate control of the merchandise at the time of the robbery. (*Id.* at p. 27.) Further, because robbery "is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety," "[i]t is sufficient . . . that [Estes] used force to prevent the guard from retaking the property and to facilitate his escape." (*Id.* at p. 28.)

A person who uses force or fear to enable a shoplifter to escape also may be convicted of the attempted robbery of an LPO. In *Robins, supra,* 44 Cal.App.5th 413, a department store LPO saw a woman accumulate a large quantity of clothing, leave the store without paying for it, and head towards a van parked near the store's entrance. (*Id.* at p. 417.) The LPO confronted the woman, forced the clothing out of her hands, and managed to detain her on the ground. (*Ibid.*) About that time, the defendant, Robins, and another man emerged from the van and assumed a fighting stance. (*Ibid.*) Upon the demand of one of the men, the LPO let the woman go. (*Ibid.*) The three got into the van and drove away without the merchandise, were later arrested, and Robins was tried and convicted for attempted robbery. (*Ibid.*) On appeal, he argued "that the concept of an attempted *Estes* robbery is incoherent and cannot logically exist" and, therefore, he should not have been convicted of it. (*Id.* at pp. 418–419.) He reasoned, apparently relying on *People v. Pham* (1993) 15 Cal.App.4th 61 (*Pham*), that

7

a thief in possession of stolen property completes an *Estes* robbery the moment he or she uses force of fear in an escape, while a thief who abandons the property or has the property confiscated before using force has merely committed a theft plus an assault. (*Robins*, at p. 419.)

The appellate court affirmed Robins's conviction. It rejected his argument that the concept of completed robbery excluded the possibility of attempted robbery because "[t]here is nothing logically incoherent about the idea of a successful attempt." (*Robins*, *supra*, 44 Cal.App.5th at p. 420.) It added, "in California this concept is established by statute. Section 663 provides, 'Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted *was perpetrated* by such person in pursuance of such attempt . . . .' (Italics added.) As our high court explained, 'Under section 663, a defendant can be convicted of an attempt to commit a crime even though the crime, in fact, was completed.' (*People v. Rundle* (2008) 43 Cal.4th 76, 138, fn. 28, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)" (*Robins*, *supra*, 44 Cal.App.5th at p. 420.) "Thus, even if every attempted *Estes* robbery is necessarily a completed crime, the crime of attempt still exists and may be punished under section 663. Generally, attempted robbery is a lesser included offense of robbery. [Citation.] [Robins's] argument seeks to parse the crime of robbery in such a way as to eliminate the lesser included offense in the *Estes* situation. We are not aware of any authority that would allow such a result . . . ." (*Id.* at p. 421.)

We review Garcia's insufficient evidence claim for substantial evidence. (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.) That is, we review for " 'evidence that is reasonable, credible, and of solid value' " and "determine 'whether, after viewing the evidence in the light most favorable to the

8

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, [we] 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Id*. at p. 515.) "Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that . . . is . . . predominantly legal. As such, it should be examined without deference." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

### 2. Analysis

There is substantial evidence to support Garcia's attempted robbery conviction. The jury could have reasonably concluded from the evidence that Garcia, after he stole merchandise from the Kohl's store, intended in the course of his escape to frighten LPO Velasquez away by displaying his pocket knife and telling Velasquez he could not outrun it. There is also substantial evidence that Velasquez's attempt was ineffectual because Velasquez stopped at the sight of Garcia's knife not because he was actually frightened, but because he was trained to disengage with a shoplifter who displayed a weapon. This evidence includes Velasquez's statement to police on the day of the incident that he was not scared during the incident and his trial testimony that he was trained to immediately disengage when a suspected shoplifter displayed a weapon. That Velasquez also testified that, upon reflection, he thought he felt some fear during the incident is of no matter under our substantial evidence standard of review. (*In re Caden C.* (2021) 11 Cal.5th 614, 640 [a reviewing court looking for substantial evidence does not "reweigh the evidence" and should uphold the fact finder's determinations " 'if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists . . . .' "]; *In re James R.* (2009) 176 Cal.App.4th 129, 134–135 ["In reviewing the sufficiency of the evidence on appeal . . . [w]e do

9

not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence."].)

Garcia argues he cannot be convicted of attempted *Estes* robbery because of the absence of evidence that he employed either force of fear, based largely on *Pham*, *supra*, 15 Cal.App.4th 61. As the *Robins* court explained, in *Pham*, "the victims caught the defendant in the act of taking items from their car; the defendant fled, and the victims gave chase. About the time the victims caught up, the defendant threw the stolen goods on the ground and attempted to fight off the victims. The victims ultimately subdued the thief. [Citation.] On appeal, the defendant argued the court erred in failing to instruct the jury on the lesser included offense of attempted robbery. [Citation.] The Court of Appeal disagreed, reasoning that if the defendant abandoned the property, there would be no robbery at all (attempted or otherwise), but that if he did not abandon the property then it could only be a completed robbery, not an attempt . . . ." (*Robins*, *supra*, 44 Cal.App.5th at pp. 419–420.) Therefore, the defendant was not entitled to the lesser included attempted robbery instruction "since such a theory was contrary to the evidence." (*Pham*, at p. 68.)

Besides the fact that *Pham* involved a different issue than what Garcia raises here—whether Pham, along with a robbery jury instruction, was entitled to a lesser included attempted robbery jury instruction—the case is easily distinguishable from the circumstances before us for a simple reason: unlike the case before us, it did not involve any substantial evidence that the defendant attempted to cause, but did not succeed in causing, the victims to actually become afraid. Rather, Pham argued he was entitled to the attempted robbery instruction because the evidence indicated that he did not accomplish a " 'taking' " of the stolen property. (*Pham*, *supra*, 15 Cal.App.4th

10

at p. 67.) The appellate court rejected his interpretation of the evidence and, therefore, his argument that he was entitled to the lesser included instruction. (*Id.* at pp. 67–68.)

Here, on the other hand, as we have discussed, there *is* substantial evidence that in the course of his escape Garcia attempted to frighten Velasquez away by displaying his pocket knife to Velasquez and telling him he could not outrun it, but that he failed to actually frighten Velasquez. Thus, we have substantial evidence that Garcia attempted but did *not* complete a required element of the *Estes* robbery of Garcia. (See *People v. Bordelon*, *supra*, 162 Cal.App.4th at p. 1319 [the element of " 'fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished" ' "].) In his briefs, Garcia offers a simple and straightforward version of this line of argument, contending that he should not have been convicted of attempted robbery in the absence of proof that Velasquez was actually afraid, since proof of actual fear is required for attempted robbery. And in a related vein, he argues that the trial court's jury instructions incorrectly permitted the jurors "to conclude that proof of Velasquez's subjective fear was unnecessary to convict Garcia of attempted robbery."

Both arguments are incorrect because, as we have already discussed, in proving the crime of attempt, "[o]ther than forming the requisite criminal intent, a defendant need not commit an element of the underlying offense." (*People v. Medina*, *supra*, 41 Cal.4th at p. 694.) Rather, "[a]n attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission." (*Ibid.*) We disagree with the contention that proof of actual fear is an element of attempted robbery as a matter of law. There is substantial evidence on this record that,

11

during his escape, Garcia, in an attempt to scare Velasquez away, brandished his knife and said something to Velasquez that could reasonably be seen as an implied threat of physical harm—and a threat serious enough to instill fear in Velasquez, even though in the end Garcia failed to actually frighten him. That, in our view, is enough to constitute a direct, ineffectual act beyond mere preparation to commit an *Estes* robbery.

The court's jury instructions were consistent with our reading of the law. The court instructed that second degree robbery includes as an element that a defendant "used force or fear to take the property or prevent the person from resisting", that fear requires that the person be "actually afraid," which is "subjective in nature", and that to prove Garcia was guilty of attempted second degree robbery, the People were required to prove that he "took a direct [but] ineffective step towards committing second degree robbery" with the intent to commit that crime. Garcia fails to provide any legal authority showing that these instructions were improper or deficient in light of the record evidence. (See *People v. Simon* (2016) 1 Cal.5th 98, 132 ["A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense."].)

At oral argument, Garcia's counsel attempted to deal with the fact there is undeniably substantial evidence of conduct designed to scare Velasquez by arguing that the fecklessness of that conduct means he cannot be guilty of an attempted *Estes* robbery. This argument, as we understand it, is that (1) the *defendant*'s intent to instill fear is not an element of robbery, (2) on this record, the jury's decision not to return a robbery verdict must mean that it found *the victim* (i.e. Velasquez) was not subjectively in fear, so (3) the only thing we have is Garcia's intent to deprive Velasquez of property,

12

which he successfully accomplished without the use of force or fear. Counsel emphasized that, with this argument, he does not go so far here as to contend there is no such thing as an attempted *Estes* robbery or that such an offense is "incoherent and cannot logically exist," which is the argument the *Robins* court rejected (*Robins*, *supra*, 44 Cal.App.5th at p. 418), but only that, on a record where a defendant charged with an *Estes* robbery succeeds in taking property, and does so without using force, while engaging in a failed effort to instill fear, then, on those facts, the evidence supports no more than a completed larceny. "While this is a clever argument, we ultimately reject it . . . ." (*Id.* at p. 416.)

To be sure, we accept Garcia's premise that the defendant's intent to instill fear is not an element of robbery. (*People v. Anderson* (2011) 51 Cal.4th 989, 995.) As enunciated in the instructions on robbery that were given in this case, the only place intent is referenced is where the jury is told, "When the defendant used force or fear," you must find that he "intended to deprive the owner of the property permanently . . . ," and, further, that his intent was "formed before or during the time [he] used force or fear." (CALCRIM No. 1600.) Other than this mandatory finding on intent, the remaining elements of the offense are that "1) The defendant took property that was not [his] own; [¶] 2) The property was in the possession of another person; [¶] 3) The property was taken from the other person or [his] immediate presence, and [¶] 4) The property was taken against that person's will." (*Ibid.*) All of the above elements, including the requisite finding on the defendant's intent while using force or fear, relate to the taking of property. To that extent, Garcia is correct.

But while Garcia's premise is correct, his conclusion—that it is irrelevant whether his attempt to deprive Velasquez of property included the

ineffectual use of fear—does not follow. The substantive offense of robbery does not require proof of a specific intent to cause fear, but it does require the *use* of force or fear. Here, by displaying and threatening Velasquez with a knife, Garcia undertook a "direct but ineffectual act" to use fear to deprive Velasquez of property. Had Garcia not undertaken such an act, then we agree he would be guilty only of larceny. But his ineffectual act to use fear makes him guilty of attempted robbery and not simply larceny. Focusing on the language of section 664 that punishment for attempt applies where a person "attempts to commit any crime, but *fails*, or is *prevented* or *intercepted* in its perpetration" (italics added), Garcia argues that the attempt statute does not apply here because Garcia did not fail, and was not prevented or intercepted, in perpetrating the crime, as shown by the fact that he successfully made off with the property (including by dissuading Velasquez from further efforts to stop him, even though Velasquez abandoned those efforts for reasons other than fear).

This argument is flawed. As the instructions given in this case state, the offense of attempted second degree robbery simply requires, that "1. The defendant took a direct but ineffective step toward committing Second Degree Robbery; [¶] AND [¶] 2. The defendant intended to commit Second Degree Robbery." (CALCRIM No. 460; see § 21a ["An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission."].) Attempt under section 664 is a specific intent crime. (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) Garcia was validly convicted of attempted second degree robbery because the evidence supports the jury's finding that he took a direct but ineffective step toward committing second degree robbery *and* he specifically intended to accomplish it. Whether he succeeded or not in committing second degree

14

robbery, or whether he also succeeded in committing some lesser included offense (i.e., larceny), is irrelevant. (See *People v. Chandler* (2014) 60 Cal.4th 508, 517 ["a person may be convicted of an attempt to commit a crime he never could have completed under the circumstances"]; *ibid.* ["the commission of an attempt does not require proof of any particular element of the completed crime"].)

What Garcia appears to assume, incorrectly, is that the only way to prove use of "fear"—or in an attempt case, an attempt to instill "fear"—is subjectively, though evidence of the victim's state of mind. It is true that the test for fear turns on the victim's subjective sense of actual fear, and one source of proof of this, obviously, is what the victim says about his own state of mind. But actual fear may be proved by circumstances. As the jury was instructed, the other person's "[a]ctual fear may be inferred from the circumstances and need not be testified to explicitly by the victim." Applying this instruction on circumstantial proof of actual fear, a reasonable jury could have believed that Velasquez was not put in fear (thus explaining why no robbery verdict was returned), but at the same time, based on circumstances other than what Velasquez said—in particular, the brandishing of a knife and the threatening words—could also have reasonably found that the threat from Garcia was serious enough to instill fear in Velasquez, even if the attempt at a threat was ultimately ineffective because Garcia happened to encounter a well-trained or especially brave loss prevention officer.

At oral argument, Garcia's counsel repeated several times that, technical though his argument may sound, there is simply not enough evidence here to show that Garcia was "scary enough" to have committed an attempted *Estes* robbery. Factually, we have explained why we disagree; legally, we cannot improve on what the *Robins* court said. "The key to

15

unraveling th[e] apparent riddle" of how a defendant may be guilty of an attempted *Estes* robbery when he successfully completed all elements of the target offense "is a simple concept: that of a *successful attempt.*" (*Robins*, *supra*, 44 Cal.App.5th at p. 420, italics in original.) In *Robins*, the evidence showed that the defendant committed every element of the offense of second degree robbery, but he was only charged with attempting that target offense. (*Id.* at p. 418.) This case goes a step beyond *Robins* because Garca was charged with second degree robbery and the jury declined to convict on that offense, presumably because of Velasquez's testimony that he was not in fear. But under the law of attempt as articulated in *Chandler*, the reasoning of *Robins* still applies. Although the jury concluded the evidence was insufficient to return a verdict finding Garcia guilty of the *completed* offense of an *Estes* robbery, it did find him guilty of—and there is substantial record evidence to support—the completed offense of an *attempted Estes* robbery.

Accordingly, we conclude Garcia's insufficient evidence claim lacks merit, as does his jury instruction claim, assuming for the sake of argument that he did not forfeit this instructional claim as the People contend by failing to object to the attempted robbery instruction below.

## B. *Sufficient Evidence Supports the Jury's Finding That Garcia Used a Deadly and Dangerous Weapon in Attempting To Rob Velasquez*

Garcia also argues the jury's finding that he used a deadly and dangerous weapon, his pocket knife, to rob Velasquez within the meaning of section 12022, subdivision (b)(1) must be reversed because there is no evidence he did so " 'in a manner not only capable of producing but also *likely to produce* death or great bodily injury,' " quoting *In re B.M.* (2018) 6 Cal.5th 528, 530. He is incorrect.

16

Section 12022, subdivision (b)(1) provides that, subject to exceptions that do not apply here, "a person who personally uses a deadly or dangerous weapon in the commission of a[n] . . . attempted felony" shall be sentenced to an additional and consecutive term of imprisonment. "In order to find 'true' a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death." (*People v. Wims* (1995) 10 Cal.4th 293, 302, quoted in *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1197, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) Knives are not considered inherently dangerous or deadly weapons, but may be found to have been used as such on a particular occasion. (*In re Bartholomew D.* (2005) 131 Cal.App.4th 317, 323, citing *People v. Graham* (1969) 71 Cal.2d 303, 327–328.)

Here, Velasquez testified that as he came within 10 to 12 feet of Garcia, Garcia turned in his direction, "whipped open" the blade of a pocket knife, and responded to Velasquez's statement that Garcia could not get away by saying something like, "You can't outrun this." This was substantial evidence that Garcia intentionally displayed a deadly or dangerous weapon in a menacing manner because a jury could reasonably conclude from these facts that Garcia took this action to threaten Velasquez with physical harm in order to scare him away. Garcia provides no reason for us to conclude otherwise, citing only case law regarding assault with a deadly weapon brought under section 245, subdivision (a)(1), not an enhancement allegation under section 12022. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1029–1038, *In re B.M.*, *supra*, 6 Cal.5th at pp. 531, 532–533 and *In re Brandon T.* (2011) 191 Cal.App.4th 1491, 1493–1494, 1496–1498.) His argument is

17

unpersuasive in the absence of his acknowledging the standard for section 12022, subdivision (b) articulated in *People v. Wims* and subsequent case law.

## III. DISPOSITION

The judgment is affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
HIRAMOTO, J.*

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18