[No. A035598. First Dist., Div. Four. Dec. 29, 1987.]

SANDRA L. BROWN et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

[Opinion certified for partial publication.†]

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, only parts I and II A of this opinion are certified for publication.

COUNSEL

John K. Van de Kamp, Attorney General, Timothy C. Laddish and Calvin J. Abe, Deputy Attorneys General, for Defendant and Appellant.

Elizabeth S. Salveson, Peter J. Busch and Howard, Rice, Nemerovski, Canady, Robertson & Falk for Plaintiffs and Respondents.

OPINION

**CHANNELL, J.**—Three investment companies and a class of their investors brought this action to invalidate the imposition of income tax by the Franchise Tax Board on distributions of income originating in federal securities. The trial court decreed that this income was immune from state taxation, and that the Board must refund the sums collected. On appeal, the Board contends that this ruling was incorrect and that the court erred in adopting certain procedures for resolving individual claims. We find no error, and affirm.

## I.  BACKGROUND

Plaintiff Sandra Brown represents the class of investors who paid the challenged tax. Plaintiffs Capital Preservation Fund (Fund), Capital Preservation Fund II (Fund II), and Capital Preservation Treasury Note Trust (Trust) are registered investment companies.[1] Fund and Fund II are organized as share-issuing corporations and appear in their own names, while Trust is organized as a trust and appears by its trustees. There is little need to distinguish here between these three plaintiffs, and for the most part we refer to them collectively as Companies.

During tax years 1978 through 1981, all money managed by Companies was invested in federal obligations, and all income distributed to their investors originated in such obligations. During those same years, Companies were required to report to the Board, and the investors were required to

---

[1] Under the Investment Company Act of 1940, an "investment company" is an issuer of securities "engaged primarily . . . in the business of investing, reinvesting, or trading in securities." (15 U.S.C.A. § 80a-3(a)(1).) This definition has in effect been incorporated into California law. (See Rev. & Tax. Code, § 23701m.)

Counsel for plaintiffs described Companies below as "mutual funds." In their brief here they say an investment company is "*like* a mutual fund," thus implying some distinction. For convenience we occasionally use the term "fund" to generically describe an investment company, without intending to reach any delicate issues of legal taxonomy.

pay state income tax on, these distributions. Plaintiff Brown sought a refund of this tax on her own behalf and on behalf of the class. Companies also sought to be excused from reporting their distributions as taxable income. The Board denied both requests. This action followed.

Plaintiffs moved for summary adjudication on the grounds that (1) the tax was indirectly imposed on federal obligations in violation of federal law; and (2) it discriminated against the federal government, its obligations, or persons with whom it deals, because similar distributions by state and local bond funds were exempt from California income tax.[2] The trial court granted the motion on the former ground, without reaching the question whether the tax was impermissibly discriminatory. The action was then certified as a class action, notice was given to the class, and some 43,000 claims were submitted by investors. The Board allowed approximately 40,000 of these claims, subject to appeal on the underlying issue of the validity of the tax. The Board rejected the rest of the claims for various reasons. After a trial, the court entered a judgment directing payment of the undisputed claims, setting aside a fund for payment of the disputed claims, and providing a procedure for resolution of the latter by a referee.

## II. VALIDITY OF TAX

### A. Tax on Federal Securities

■ Obligations of the federal government, and the interest paid on them, are exempt from state taxation. (*American Bank & Trust Co.* v. *Dallas County* (1983) 463 U.S. 855, 866-867 [77 L.Ed.2d 1072, 1081-1082, 103 S.Ct. 3369]; *Memphis Bank & Trust Co.* v. *Garner* (1983) 459 U.S. 392, 396 [74 L.Ed.2d 562, 566, 103 S.Ct. 692]; see *First Nat. Bank of Atlanta* v. *Bartow County Bd.* (1985) 470 U.S. 583 [84 L.Ed.2d 535, 105 S.Ct. 1516]; *Rockford Life Ins. Co.* v. *Ill. Dept. of Revenue* (1987) 482 U.S. 182, 96 L.Ed.2d 152, 107 S.Ct. 2312.) This exemption is conferred by both statute[3]

---

[2] Plaintiffs also argued below that investors in Trust were entitled to relief for the additional reason that, as an ordinary trust, it passed the tax attributes of its income through to its "beneficiaries." In view of our holding here, we need not address this point.

[3] At the time in question the applicable statute provided: "[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." (Rev.Stat., § 3701, codified at 31 U.S.C.A. § 742, replaced by 31 U.S.C.A. § 3124(a) (1982); as stated in *American Bank, supra,* 463 U.S. at p. 859, fn. 1 [77 L.Ed.2d at p. 1076].)

It was stipulated that the tax in question is not a franchise or estate tax.

and the federal constitution.[4] It is intended " 'to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit.' " (*Memphis Bank, supra,* at p. 396 [74 L.Ed.2d at p. 566], quoting *Smith* v. *Davis* (1944) 323 U.S. 111, 117 [89 L.Ed. 107, 112, 65 S.Ct. 157].) It applies to any tax "regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." (*American Bank, supra,* at p. 862 [77 L.Ed.2d at p. 1079], italics in original.) In this context, "considered" means "taken into account, or included in the accounting." (*Ibid.*)

That the immunity extends to the tax before us seems to follow from the leading federal cases on the subject. In *Memphis Bank* the Supreme Court held that the statute barred a tax on banks which included in taxable earnings the interest on federal securities. (459 U.S. at pp. 396, 398-399 [74 L.Ed.2d at p. 566-568].) The Board initially sought to distinguish that case by noting that the tax there fell directly on the holders of federal securities, whereas the securities here are held by companies who are not taxed. This distinction was erased by *American Bank, supra,* 463 U.S. 855, in which the Supreme Court set aside a tax *measured* by a bank's assets (including federal securities), but *imposed* on bank *shareholders.* The court described the immunity accorded to federal obligations as broad and "sweeping." (*American Bank, supra,* 463 U.S. at p. 862 [77 L.Ed.2d at p. 1078]; see *Memphis Bank, supra,* at p. 396 [74 L.Ed.2d at p. 566].) It noted that the statute was amended in 1959 to "sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations . . . ." (*American Bank,* 463 U.S. at p. 867 [77 L.Ed.2d at p. 1082].)

(2)    The Board asserts that the tax before us is not "measured directly or indirectly" by income from federal obligations, but concerns only "dividends" paid by Companies to their investors. The Board contends that this distinction flows from the general principle that "a corporation is a nonconductor that cuts off connection between dividends to its stockholders and the corporate funds from which the dividends are paid." (*Miller* v. *Milwaukee* (1927) 272 U.S. 713, 714 [71 L.Ed. 487, 489, 47 S.Ct. 280].) However, this point is reminiscent of the "formal but economically meaningless"

---

[4] The extent of overlap between the statutory and constitutional exemptions is unclear. (See *Memphis Bank, supra,* 459 U.S. at p. 397 [74 L.Ed.2d at p. 567] [statute "principally a restatement of the constitutional rule"]; *First National Bank, supra,* 470 U.S. at p. 593 [84 L.Ed.2d at p. 543] [1959 amendments "did not broaden the scope of the exemption . . . beyond that mandated by the Constitution"]; compare *Rockford Life Insurance, supra,* 482 U.S. at p. 188, [96 L.Ed.2d at p. 159, 107 S.Ct. at p. 2315] [quoting *Memphis Bank* but treating as separate issues]; *American Bank, supra,* 463 U.S. at pp. 858, 862-867 [77 L.Ed.2d at p. 1076, 1078-1082] [describing change in law effected by 1959 amendments].)

distinctions which were previously held to permit taxation of bank shareholders even if the underlying assets were federal securities—distinctions which became untenable with the 1959 amendments to the federal statute. (See *American Bank, supra,* 463 U.S. at pp. 858, 871, fn. 14 [77 L.Ed.2d at p. 1076, 1085].)

Moreover, as applied here, the "nonconductor" principle is less than "economically meaningless"; as a functional matter, it is wrong. The plaintiff Companies are not ordinary corporations, but registered investment companies whose business is to provide a conduit for investment in federal securities by persons who might otherwise be unable or unwilling to enter that market. The ability to pool investments in such funds stimulates the market for such securities by lowering the minimum investment necessary to participate in a given type of security, spreading the risks and rewards associated with (for example) fluctuating interest rates, and providing greater convenience and liquidity than would often be realized with individually purchased securities. Congress expressly recognized the "conductor" role of such companies when it declared, in the Investment Company Act of 1940, that they are "*media* for the investment in the national economy of a substantial part of the national savings," which "may have a vital effect upon the *flow of such savings* into the capital markets." (15 U.S.C.A. § 80a-1(a)(4), italics added.)

The constricting effect of this tax on a congressionally recognized conduit for investment capital must be weighed, together with the legislative goal of preserving the market value and investment attractiveness of federal securities, in subjecting this tax to the statutory test, i.e., whether the proceeds of federal securities are *directly or indirectly* taken into account in computing the tax. In this context, the Board's claim that it is blind to the origin of the distributions paid to the plaintiff class, even if accepted, is without economic significance.[5] Unless Congress directs otherwise, the distributions Companies pay to their investors must be considered as so closely identified with their source that the computation of the tax involves indirect consideration of federal obligations.

This conclusion is consistent with the holdings reached in other jurisdictions. (*Andras* v. *Illinois Department of Revenue* (1987) 154 Ill.App.3d 37,

---

[5]To some extent the Board seems to reply on the notion that since the amounts taxed are calculated by Companies, the Board need perform no computation at all and therefore need not take the underlying securities "into account." We reject any suggestion that the federal exemption may be circumvented simply by relying on the accounting or "computation" furnished by a payor or taxpayer. The taxing authorities in *American Bank* also relied on reporting by the shareholder and the bank, but this did not prevent a holding of illegality. (See 463 U.S. at p. 860 [77 L.Ed.2d at p. 1077]; *Bank of Texas* v. *Childs* (Tex. Civ.App. 1981) 615 S.W.2d 810, 813.) Moreover, the Board is empowered to confirm the figures supplied to it by compelling production of documents and examining witnesses. (See Rev. & Tax. Code, § 19254.)

106 Ill.Dec. 732 [506 N.E.2d 439, 443]; *Commissioner of Revenue* v. *Plymouth Home National Bank* (1985) 394 Mass. 66 [473 N.E.2d 1139, 1140]); *Matz* v. *Department of Treasury* (1986) 155 Mich.App. 778 [401 N.W.2d 62, 64] [argument that tax was on shares rather than on federal securities, "elevates form over substance"]; *Estate of Kraft* v. *Indiana Department of State Revenue* (Dec. 2, 1986) Cir. Ct. Hamilton County, Ind., No. C85-789; *Capital Preservation Fund, Inc.* v. *Wisconsin Department of Revenue* (May 11, 1987) Cir. Ct. Dane County, Wis., No. 86 CV 1385; *State of Vermont* v. *Sawyer Estate* (Feb. 20, 1986) Super. Ct. Chittenden County, Vt., No. S 101-84 CnM.)[6] ■ ■■■ We conclude that the tax in question runs afoul of the federal statutory immunity.

## II B., III-VIII*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Anderson, P. J., and Sabraw, J., concurred.

A petition for a rehearing was denied January 21, 1988, and appellant's petition for review by the Supreme Court was denied March 24, 1988.

---

[6] The three cases last cited are trial court opinions. The Board contends that such opinions cannot be relied upon. It argues that since unpublished opinions of the California Courts of Appeal cannot be cited in our courts (Cal. Rules of Court, rule 977), it would be anomalous to consider unpublished trial court decisions from elsewhere. We disagree. The purpose of rule 977 is not to declare all unpublished cases anathema, but to preserve the effective operation of the "selective publication rule" as it affects the courts of this state. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 583, 578, pp. 574-575, 569-570.) Unpublished decisions by the courts of other jurisdictions may be cited and considered for their persuasive value. In this case we have found the thoughtful opinions of Judges Proffitt, Frankel, and Katz illuminating and persuasive on the points discussed.

* See footnote, *ante,* page 300.