Filed 8/15/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| RONALD D. MASS et al., | B286857 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC627648) |
| v. | |
| FRANCHISE TAX BOARD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge. Affirmed.

Dakessian Law, Mardiros H. Dakessian, Zareh A. Jaltorossian and Ruben Sislyan for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Diane S. Shaw, Assistant Attorney General, Brian D. Wesley and Matthew C. Heyn, Deputy Attorneys General, for Defendant and Respondent.

————————————

Ronald D. and Pamela S. Mass (Taxpayers) bought shares in a company that invests in government bonds. They received dividends derived from interest on those bonds. Because the California Constitution exempts interest on government bonds from taxation, Taxpayers contend that their dividends were unconstitutionally taxed. We disagree.

## BACKGROUND

The parties stipulated to the following facts. Taxpayers reside in California. They held shares in The Blackrock Insured Municipal Term Trust, Inc. (BMT), a regulated investment company (RIC). (Int.Rev. Code, § 851.) BMT received 12.41 percent of its interest income from its holdings in California municipal bonds. During the 2010 tax year, Taxpayers received interest dividends[1] from their investments in BMT, but did not report the interest dividends as taxable income. The Franchise Tax Board (the Board) assessed taxes against Taxpayers on the interest income, which they protested.

The amount of tax in controversy is $7,384, which is the tax assessed on the interest dividends Taxpayers received from BMT that were derived from California bonds. Taxpayers filed a claim for refund, which the Board denied. They also filed an appeal with the State Board of Equalization, which was denied.

Taxpayers then filed a complaint for a refund of taxes in the superior court. The parties stipulated to the facts and did not present any witness testimony. Taxpayers argued that Revenue and Taxation Code section 17145 (section 17145), which purports to tax interest income on bonds exempted from taxation under

---

[1] The parties describe the distributions from BMT as "interest dividend," and we adopt that description.

2

article XIII, section 26, subdivision (b) of the California Constitution (article XIII), is unconstitutional on its face. Taxpayers also argued that, because BMT is an RIC that passes through bond interest to investors, the taxability of the interest income does not change merely because it changes hands. The Board countered that because the bond interest was distributed to Taxpayers as a "dividend" by a corporation, it lost the exemption.

The trial court ruled in favor of the Board, reasoning that even though the Constitution exempts interest income on state bonds from taxation, the Legislature had the authority to create an exception to the exemption for certain interest on state bonds.

## DISCUSSION

### I.     Standard of review

Taxpayers' facial challenge to the constitutionality of section 17145 is a question of law that we review de novo. (See *Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 486.) When deciding a facial challenge, we consider only the text of the statute and not its application to any particular circumstance. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) There are two tests for a facial challenge. Under the stricter test, the statute will be upheld unless it conflicts with the Constitution in *all* circumstances. Under the more lenient test, the statute will be upheld unless it conflicts with the Constitution in *most* circumstances. (*City of Bellflower v. Cohen* (2016) 245 Cal.App.4th 438, 443.) Regardless of which test is applied, "the party challenging the constitutionality of the statute bears a heavy burden and cannot prevail simply by suggesting a

3

hypothetical in which the application of the statute would be unconstitutional." (*Ibid.*)

## II.    Article XIII

Our analysis begins with the constitutional exemption in article XIII.  We apply the basic principles of constitutional interpretation and statutory construction.  (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418.)  If the language is clear and unambiguous, the plain meaning governs.  (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056.)  Only if the language is ambiguous will we consider extrinsic evidence and legislative history.  (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444–445.)  Article XIII states plainly:  "Interest on bonds issued by the State or local government in the State is exempt from taxes on income."  Interest means compensation for the use or forbearance of money.  (*Deputy v. Du Pont* (1940) 308 U.S. 488, 498.)  A state or local bond is a long-term, interest-bearing debt, instrument issued by a government entity.  (Black's Law Dict. (11th ed. 2019) p. 220.)  Accordingly, the constitutional provision means what it says, interest on state or local government bonds is tax-exempt and excludable from income.

## III.    Section 17145

Because article XIII exempts interest on state and local bonds from personal taxable income, the issue becomes whether section 17145 violates that exemption.  Section 17145 provides that an RIC is qualified to pay exempt interest dividends if, at the close of each quarter of its taxable year, at least 50 percent of the value of its total assets consists of obligations which, when held by an individual, the interest therefrom would be exempt

4

from taxation.  Thus, Taxpayers contend, when an RIC has less than 50 percent of the value of its total assets in tax-exempt bonds, but still pays dividends to its shareholders with funds derived from the interest on those bonds, the resulting tax on the shareholder violates article XIII's exemption as an indirect tax on constitutionally exempt interest.  The Board argues that RIC's like BMT, are not true pass-through entities and may only pass on the character of tax-exempt interest on government bonds when the asset threshold conditions of section 17145 are met.

IV.    Section 17145 does not conflict with the constitution

" 'Unlike the Federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature.' [Citations.]  Thus, 'the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution.' [Citations.]  '[W]e do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited.' [Citations.]

"The above stated principle 'is of particular importance in the field of taxation, in which the Legislature is generally supreme.' [Citations.]  'Generally the Legislature is supreme in the field of taxation, and the provisions on taxation in the state Constitution are a limitation on the power of the Legislature rather than a grant to it.' [Citation.]  'In other words, the Legislature's authority to impose taxes and regulate the collection thereof exists unless it has been expressly eliminated by the Constitution.' " (*Howard Jarvis Taxpayers' Assn. v. Fresno*

5

*Metropolitan Projects Authority* (1995) 40 Cal.App.4th 1359, 1374–1375.)

Article XIII is silent on exempt interest dividends paid to shareholders. Therefore, based on its plain language, there is no conflict between the constitutional exemption and section 17145. "Constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed." (*Cedars of Lebanon Hosp. v. County of L. A.* (1950) 35 Cal.2d 729, 734.) "Grants of immunity from taxation, in derogation of a sovereign power of the state, are strictly construed." (*Pacific Co. v. Johnson* (1932) 285 U.S. 480, 491.) "The Legislature may grant or deny a tax credit in any manner it sees fit, aside from constitutional constraints not at issue here, and the scope, application, and terms of eligibility are entirely for the Legislature to establish. Our role is confined to ascertaining what the Legislature has actually done, not assaying whether sound policy might support a different rule." (*General Motors Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 773, 790.) Any doubts as to the application of the exemption must be resolved in favor of the Board.[2] (*Ibid.*)

Essentially, the parties' fundamental disagreement is whether the distributions received by Taxpayers should be classified as dividends or interest on a bond. In other words, the

---

[2] This is not an endorsement of the trial court's ruling that the Legislature was authorized to create an "exception to the exemption." While the Legislature's authority to impose taxes is generally supreme, it cannot run afoul of the Constitution. (*Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1359–1360.)

6

issue is whether dividends derived from interest retain their tax-exempt status when distributed from an RIC holding less than 50 percent in state and local bonds. Relying on *Brown v. Franchise Tax Bd.* (1987) 197 Cal.App.3d 300, 304–305, the Taxpayers argue that the distinction between tax-exempt interest and dividends to shareholders that are derived from that interest is "economically meaningless."

However, *Brown* is factually and legally distinguishable. Unlike BMT, which only had 12.41 percent of its interest income from California municipal bonds, the investment companies in *Brown* had 100 percent of their funds invested in federal obligations and all distributions to their investors originated from those obligations. (*Brown v. Franchise Tax Bd.*, *supra,* 197 Cal.App.3d at p. 302.) Notably, after *Brown* was decided, the Legislature amended section 17145 (Stats. 1988, ch. 671, § 1, p. 2269) to allow an RIC's holdings in federal obligations to count towards the 50 percent threshold. Hence, there was no need for *Brown* to consider the effect of section 17145's threshold requirement because the companies were indisputably over the threshold, and federal obligations were excluded from section 17145. The distinction between exempt interest and dividends to shareholders, which the Taxpayers claim *Brown* rejected, was considered in a wholly different context, where no interest on federal obligations was exempt regardless of how much an RIC invested in those obligations. *Brown*'s suggestion that distributions to a shareholder made by an RIC retain their tax-exempt status as interest is therefore inapplicable here. Taxpayers simply have not established that section 17145 conflicts with the tax exemption under article XIII.

7

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


DHANIDINA, J.


I concur:


MURILLO, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8

LAVIN, Acting P. J., Concurring:

Article XIII, section 26(a) of the California Constitution authorizes the Legislature to impose income taxes on persons, corporations, and other entities. Subdivision (b) of that section (Section 26(b)) exempts from state income tax interest on bonds issued by the State or a local government in the State (California government bonds). I write separately to emphasize that Section 26(b) does not prohibit the Legislature from imposing state income tax on corporate shareholder dividends comprised, in part, of interest on California government bonds.

California Revenue and Taxation Code section 17145 (Section 17145) authorizes a regulated investment company (RIC) to designate a portion of its shareholder dividends as exempt from state income tax if, and to the extent that, at least 50 percent of the RIC's assets consist of tax-exempt California government bonds. Appellants Ronald and Pamela Mass (taxpayers) invested in an RIC with an investment portfolio that contains some California government bonds but does not meet the 50 percent threshold. They claim the 50 percent threshold in Section 17145 is facially unconstitutional because it violates Section 26(b). Essentially, the taxpayers contend that a shareholder dividend from an RIC must be exempt from state income tax if, and to the extent, *any* portion of that dividend could be traced back to interest earned on California government bonds. They are wrong.

Section 26(b) restricts the Legislature's ability to impose income tax on "[i]nterest on bonds issued by the State or a local government in the State[.]" I agree with the taxpayers that Section 26(b) means what it says: *bond interest* is tax exempt. And if the taxpayers had received interest on a California

government bond, that interest would be exempt from personal income tax. They did not, however, receive interest on a California government bond. Instead, the taxpayers received dividends from a corporation in which they are shareholders.

To hold that Section 17145 is facially unconstitutional, we must conclude that the statute's provisions "inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181.) Because Section 26(b) says nothing about shareholder dividends, there is no conflict between Section 26(b) and Section 17145, which specifically addresses the taxation of corporate shareholder dividends. Reading Section 26(b) broadly enough to include shareholder dividends is, in my view, inconsistent with well-settled principles of constitutional interpretation.

Additionally, I reject the taxpayers' contention that Section 26(b)'s tax exemption must apply without limitation because, in their view, an RIC is a conduit designed to pass investment income to its investors. On that point, the taxpayers find *Brown v. Franchise Tax Board* (1987) 197 Cal.App.3d 300 (*Brown*), persuasive. I do not.

In *Brown*, the court analyzed whether a state tax imposed on distributions from RICs that held only federal securities violated a federal law exempting federal obligations, and interest paid on them, from state tax. (*Brown, supra*, 197 Cal.App.3d at pp. 303–304.) The court concluded the state tax violated the federal statute, but its analysis is of limited (if any) utility in this case because the federal law at issue in *Brown* was substantially broader in scope and more specific in its prohibitions than Section 26(b).

2

Specifically, in *Brown*, the court interpreted a federal statute providing: " '[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.' " (*Brown, supra*, 197 Cal.App.3d at p. 303, fn. 3.) And as the court recognized, the United States Supreme Court had already explained the federal statute was "intended ' "to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit." ' [Citation.] It applies to any tax 'regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax.' [Citation.] In this context, 'considered' means 'taken into account, or included in the accounting.' [Citation.]" (*Id.* at p. 304.)

Based on that statute, as well as the Supreme Court's construction of it, the court in *Brown* rejected the Franchise Tax Board's argument that the tax on RIC dividends—dividends derived *entirely* from interest on federal securities—was not measured "directly or indirectly" by income from federal obligations. Instead, the court concluded that the computation of the tax "involves indirect consideration of federal obligations." (*Brown, supra*, 197 Cal.App.3d at pp. 304–305.)

As already noted, Section 26(b) is simple and straightforward. It exempts from income tax only "[i]nterest on

3

bonds issued by the State or a local government in the State[.]" Section 26(b) does not cast the expansive net that the federal statute under consideration in *Brown* did, exempting from income tax "every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax … ." (*Brown, supra*, 197 Cal.App.3d at p. 303, fn. 3) For that reason, *Brown* is distinguishable and its rationale is inapplicable here.

One other point merits discussion. In support of their analysis, the taxpayers consistently reject any distinction between a shareholder dividend and bond interest. They point out, correctly, that if they "received the identical income from a direct purchase of municipal bonds, that income unquestionably would have been covered by the constitutional exemption." Summing up their argument, they assert that the Franchise Tax Board "has articulated no rational reason why [the taxpayers] should be deemed to have lost the exemption merely because that same interest income was passed to them by BMT." In sum, they posit, "[w]hatever label is attached to it, the bond interest [the taxpayers] received was just that—bond interest." I reject the taxpayers' oversimplified approach.

The tax treatment the taxpayers seek—a complete pass through of *all* tax exemptions to which a corporation is entitled— is available under some circumstances. A brief illustration is of some assistance here. A typical corporation defined under subchapter C[1] of the Internal Revenue Code[2] engages in a

---

[1] 26 U.S.C. § 301 et seq.

[2] All subchapter references are to the Internal Revenue Code (26 U.S.C. § 1 et seq.).

business of some type—making widgets, for example. The corporation makes and sells widgets, brings in income, incurs expenses, and, hopefully, generates profit. Importantly for our purposes, under subchapter C, corporate profits are taxed to the corporation. (26 U.S.C. § 11.) And distributions in the form of shareholder dividends are generally taxed as ordinary income to the shareholder. (*Id.*, § 301(c).) This traditional structure results in what is commonly referred to as double taxation.

A corporation that elects to be taxed under subchapter S[3] avoids double taxation. (26 U.S.C. §§ 1362, 1363.) It may, like a C corporation, sell widgets and generate profits. But for tax purposes, the corporation is disregarded. (*Id.*, § 1363(a).) No dividends are issued by the corporation to its shareholders and no taxes are paid by the corporation. Instead, income, losses, deductions, and credits are reported by the shareholder(s) on a pro rata basis on their individual return(s). (*Id.*, § 1366(a).) And tax exemptions to which the corporation would otherwise be entitled may be claimed on a pro rata basis by the shareholder(s). (*Ibid.*) Thus, it is commonly said that an S corporation is a "pass through" because "[t]he character of any item included in a shareholder's pro rata share … shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." (*Id.*, § 1366(b).)

A qualified RIC, which is defined under subchapter M[4], is unlike either a C corporation or an S corporation because, among other things, it does not operate a business such as making

---

[3] 26 U.S.C. § 1361 et seq.

[4] 26 U.S.C. § 851 et seq.

widgets. An RIC's only corporate objective is to make investments on behalf of its shareholders and to distribute investment income, after expenses, to its shareholders in the form of dividends. For this reason, an RIC is sometimes described as an investment conduit. (See, e.g., *Brown, supra*, 197 Cal.App.3d at p. 305 [noting RICs "provide a conduit for investment in federal securities by persons who might otherwise be unable or unwilling to enter that market"].) In order to qualify as an RIC, the company must file an election with its tax return and derive at least 90 percent of its gross income from investments in stocks, securities, currencies, and the like. (26 U.S.C. § 851(a) & (b).) Further, in each quarter of the taxable year, an RIC must derive at least 50 percent of its value from cash, government securities, securities of other RICs, and other securities with some limitations, and it must be diversified as provided. (*Id.*, § 851(b)(3).)

Qualifying RICs are treated favorably under federal tax law in a number of ways. Specifically, and unlike a C corporation, an RIC may deduct dividends paid to its shareholders as an expense, thereby reducing the RIC's taxable income. (26 U.S.C. § 852(b)(2)(D).) And because a qualifying RIC must pay out at least 90 percent of its earnings (*id.*, § 852(a)), an RIC may nearly or entirely avoid taxation at the corporate level. For this reason, an RIC is somewhat similar to an S corporation in that most, if not all, of its income passes through the corporation to its investors without being taxed to the corporation. But an RIC is not a "pass through" as that term is understood with reference to S corporations, where the corporate form is *disregarded* for tax purposes. Instead, an RIC *is* taxed at the corporate level, just as a C corporation is. (*Id.*, § 852(b).) The difference is that an RIC has a substantially greater ability to reduce its corporate tax liability

6

by operating within the strict boundaries of subchapter M. The minimization—or avoidance—of corporate tax liability translates directly into larger dividends for shareholders and is a distinct feature of an RIC.

Further, and of particular interest here, when a qualifying RIC issues a shareholder dividend, the RIC may designate the character of the dividend (or portions of the dividend) as ordinary income, long- or short-term capital gains, tax-exempt interest, or return of capital. In this way, the shareholder may take advantage of the lower tax rates (or tax exemptions) applicable to each designated category. Importantly, under federal law, an RIC may only characterize a dividend (or portion thereof) as tax-exempt interest if at least 50 percent of its total assets at the end of the year consists of tax-exempt obligations (i.e., State or local bonds). (26 U.S.C. § 852(b)(5).) In Section 17145, California imposes the same requirement but specifically limited to California government bonds.

In any event, Section 17145 is not, as the taxpayers argue, a subversion of Section 26(b)'s income tax exemption for California government bonds. Quite the opposite: Section 17145 extends the exemption to corporate dividends under certain limited conditions (i.e., where the corporation invests substantially in California government bonds). And in my view, it is plainly within the Legislature's discretion to decide whether, and when, to allow a corporation to issue a shareholder dividend that is exempt from state income tax.

In sum, Section 26(b) cannot reasonably be read to limit the Legislature's ability to define corporate structures and permit some corporations, under extremely limited circumstances, to

7

issue dividends to its shareholders that are exempt from state income tax. For these reasons, I concur in the judgment.

LAVIN, Acting. P. J.