LAVIN, Acting P. J., Concurring:
Article XIII, section 26(a) of the California Constitution authorizes the Legislature to impose income taxes on persons, corporations, and other entities. Subdivision (b) of that section ( Section 26 (b)) exempts from state income tax interest on bonds issued by the State or a local government in the State (California government bonds). I write separately to emphasize that Section 26 (b) does not prohibit the Legislature from imposing state income tax on corporate shareholder dividends comprised, in part, of interest on California government bonds.
California Revenue and Taxation Code section 17145 ( Section 17145 ) authorizes a regulated investment company (RIC) to designate a portion of its shareholder dividends as exempt from state income tax if, and to the extent that, at least 50 percent of the RIC's assets consist of tax-exempt California government bonds. Appellants Ronald and Pamela Mass (taxpayers) invested in an RIC with an investment portfolio that contains some California government bonds but does not meet the 50 percent threshold. They claim the 50 percent threshold in Section 17145 is facially unconstitutional because it violates Section 26 (b). Essentially, the taxpayers contend that a shareholder dividend from an RIC must be exempt from state income tax if, and to the extent, any portion of that dividend could be traced back to interest earned on California government bonds. They are wrong.
Section 26 (b) restricts the Legislature's ability to impose income tax on "[i]nterest on bonds issued by the State or a local government in the State[.]" I agree with the taxpayers that Section 26 (b) means what it says: bond interest is tax exempt. And if the taxpayers had received interest on a California government bond, that interest would be exempt from personal income tax. They did not, however, receive interest on a California government bond. Instead, the taxpayers received dividends from a corporation in which they are shareholders.
To hold that Section 17145 is facially unconstitutional, we must conclude that the statute's provisions "inevitably pose a present total and fatal conflict *967 with applicable constitutional prohibitions." ( Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 181, 172 Cal.Rptr. 487, 624 P.2d 1215.) Because Section 26 (b) says nothing about shareholder dividends, there is no conflict between Section 26(b) and Section 17145, which specifically addresses the taxation of corporate shareholder dividends. Reading Section 26 (b) broadly enough to include shareholder dividends is, *285 in my view, inconsistent with well-settled principles of constitutional interpretation.
Additionally, I reject the taxpayers' contention that Section 26(b)'s tax exemption must apply without limitation because, in their view, an RIC is a conduit designed to pass investment income to its investors. On that point, the taxpayers find Brown v. Franchise Tax Board (1987) 197 Cal.App.3d 300, 242 Cal.Rptr. 810 ( Brown ), persuasive. I do not.
In Brown , the court analyzed whether a state tax imposed on distributions from RICs that held only federal securities violated a federal law exempting federal obligations, and interest paid on them, from state tax. ( Brown, supra , 197 Cal.App.3d at pp. 303-304, 242 Cal.Rptr. 810.) The court concluded the state tax violated the federal statute, but its analysis is of limited (if any) utility in this case because the federal law at issue in Brown was substantially broader in scope and more specific in its prohibitions than Section 26(b).
Specifically, in Brown , the court interpreted a federal statute providing: " '[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.' " ( Brown, supra , 197 Cal.App.3d at p. 303, fn. 3, 242 Cal.Rptr. 810.) And as the court recognized, the United States Supreme Court had already explained the federal statute was "intended ' "to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit." ' [Citation.] It applies to any tax 'regardless of its form if federal obligations must be considered, either directly or indirectly, in computing the tax.' [Citation.] In this context, 'considered' means 'taken into account, or included in the accounting.' [Citation.]" ( Id. at p. 304, 242 Cal.Rptr. 810.)
Based on that statute, as well as the Supreme Court's construction of it, the court in Brown rejected the Franchise Tax Board's argument that the tax on RIC dividends-dividends derived entirely from interest on federal securities-was not measured "directly or indirectly" by income from federal *968 obligations. Instead, the court concluded that the computation of the tax "involves indirect consideration of federal obligations." ( Brown, supra , 197 Cal.App.3d at pp. 304-305, 242 Cal.Rptr. 810.)
As already noted, Section 26 (b) is simple and straightforward. It exempts from income tax only "[i]nterest on bonds issued by the State or a local government in the State[.]" Section 26 (b) does not cast the expansive net that the federal statute under consideration in Brown did, exempting from income tax "every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax ...." ( Brown, supra , 197 Cal.App.3d at p. 303, fn. 3, 242 Cal.Rptr. 810 ) For that reason, Brown is distinguishable and its rationale is inapplicable here.
One other point merits discussion. In support of their analysis, the taxpayers consistently reject any distinction between a shareholder dividend and bond interest. They point out, correctly, that if they "received the identical income from a direct purchase of municipal bonds, that income unquestionably would have been covered *286 by the constitutional exemption." Summing up their argument, they assert that the Franchise Tax Board "has articulated no rational reason why [the taxpayers] should be deemed to have lost the exemption merely because that same interest income was passed to them by BMT." In sum, they posit, "[w]hatever label is attached to it, the bond interest [the taxpayers] received was just that-bond interest." I reject the taxpayers' oversimplified approach.
The tax treatment the taxpayers seek-a complete pass through of all tax exemptions to which a corporation is entitled-is available under some circumstances. A brief illustration is of some assistance here. A typical corporation defined under subchapter C[1] of the Internal Revenue Code[2] engages in a business of some type-making widgets, for example. The corporation makes and sells widgets, brings in income, incurs expenses, and, hopefully, generates profit. Importantly for our purposes, under subchapter C, corporate profits are taxed to the corporation. ( 26 U.S.C. § 11.) And distributions in the form of shareholder dividends are generally taxed as ordinary income to the shareholder. (Id. , § 301(c).) This traditional structure results in what is commonly referred to as double taxation.
A corporation that elects to be taxed under subchapter S[3] avoids double taxation. ( 26 U.S.C. §§ 1362, 1363.) It may, like a C corporation, sell widgets *969 and generate profits. But for tax purposes, the corporation is disregarded. ( Id. , § 1363(a).) No dividends are issued by the corporation to its shareholders and no taxes are paid by the corporation. Instead, income, losses, deductions, and credits are reported by the shareholder(s) on a pro rata basis on their individual return(s). (Id. , § 1366(a).) And tax exemptions to which the corporation would otherwise be entitled may be claimed on a pro rata basis by the shareholder(s). (Ibid. ) Thus, it is commonly said that an S corporation is a "pass through" because "[t]he character of any item included in a shareholder's pro rata share ... shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation." (Id. , § 1366(b).)
A qualified RIC, which is defined under subchapter M[4] , is unlike either a C corporation or an S corporation because, among other things, it does not operate a business such as making widgets. An RIC's only corporate objective is to make investments on behalf of its shareholders and to distribute investment income, after expenses, to its shareholders in the form of dividends. For this reason, an RIC is sometimes described as an investment conduit. (See, e.g., Brown, supra , 197 Cal.App.3d at p. 305, 242 Cal.Rptr. 810 [noting RICs "provide a conduit for investment in federal securities by persons who might otherwise be unable or unwilling to enter that market"].) In order to qualify as an RIC, the company must file an election with its tax return and derive at least 90 percent of its gross income from investments in stocks, securities, currencies, and the like. ( 26 U.S.C. § 851(a) & (b).) Further, in each quarter of the taxable year, an RIC must derive at least 50 percent of its value from cash, government securities, securities of other RICs, and other securities with some limitations, and it must be diversified as provided. ( Id. , § 851(b)(3).)
*287 Qualifying RICs are treated favorably under federal tax law in a number of ways. Specifically, and unlike a C corporation, an RIC may deduct dividends paid to its shareholders as an expense, thereby reducing the RIC's taxable income. ( 26 U.S.C. § 852(b)(2)(D).) And because a qualifying RIC must pay out at least 90 percent of its earnings ( id. , § 852(a) ), an RIC may nearly or entirely avoid taxation at the corporate level. For this reason, an RIC is somewhat similar to an S corporation in that most, if not all, of its income passes through the corporation to its investors without being taxed to the corporation. But an RIC is not a "pass through" as that term is understood with reference to S corporations, where the corporate form is disregarded for tax purposes. Instead, an RIC is taxed at the corporate level, just as a C corporation is. ( Id. , § 852(b).) The difference is that an RIC has a substantially greater ability to reduce its corporate tax liability by operating within the strict boundaries of subchapter M. The minimization-or avoidance-of *970 corporate tax liability translates directly into larger dividends for shareholders and is a distinct feature of an RIC.
Further, and of particular interest here, when a qualifying RIC issues a shareholder dividend, the RIC may designate the character of the dividend (or portions of the dividend) as ordinary income, long- or short-term capital gains, tax-exempt interest, or return of capital. In this way, the shareholder may take advantage of the lower tax rates (or tax exemptions) applicable to each designated category. Importantly, under federal law, an RIC may only characterize a dividend (or portion thereof) as tax-exempt interest if at least 50 percent of its total assets at the end of the year consists of tax-exempt obligations (i.e., State or local bonds). ( 26 U.S.C. § 852(b)(5).) In Section 17145, California imposes the same requirement but specifically limited to California government bonds.
In any event, Section 17145 is not, as the taxpayers argue, a subversion of Section 26 (b)'s income tax exemption for California government bonds. Quite the opposite: Section 17145 extends the exemption to corporate dividends under certain limited conditions (i.e., where the corporation invests substantially in California government bonds). And in my view, it is plainly within the Legislature's discretion to decide whether, and when, to allow a corporation to issue a shareholder dividend that is exempt from state income tax.
In sum, Section 26(b) cannot reasonably be read to limit the Legislature's ability to define corporate structures and permit some corporations, under extremely limited circumstances, to issue dividends to its shareholders that are exempt from state income tax. For these reasons, I concur in the judgment.

26 U.S.C. § 301 et seq.

All subchapter references are to the Internal Revenue Code (26 U.S.C. § 1 et seq. ).

26 U.S.C. § 1361 et seq.

26 U.S.C. § 851 et seq.